### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**WILLIE GROSS, JR.**                                            **CIVIL ACTION**

**VERSUS**                                                      **NO. 11-446**

**NEWELL NORMAND, ET AL.**                                      **SECTION "J"(1)**

### REPORT AND RECOMMENDATION

Plaintiff, Willie Gross, Jr., filed this civil action pursuant to 42 U.S.C. § 1983. He has named as defendants Sheriff Newell Normand, Lieutenant Gary Cook, Shift Sergeant H. Sylve, and Deputies Louis Ancar, T. Kelly, C. Emmanuel, L. Grandsart, A. Farris, E. Ussin, B. Cohen, C. Simmons, K. Calcagno, A. Mathern, and S. Johnson. In this lawsuit, plaintiff asserts various claims arising from the confiscation and destruction of his personal property during a shakedown at the Jefferson Parish Correctional Center.

Pursuant to this Court's order, plaintiff filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56. Rec. Doc. 57. As also ordered, the defendants have likewise filed a motion for summary judgment, Rec. Doc. 77, which plaintiff has opposed, Rec. Doc. 79.

### I. Summary Judgment Standards

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). In reviewing a motion for summary judgment, the Court may grant the motion when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). There is no "genuine issue"

when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001). The Court has no duty to search the record for evidence to support a party's opposition to summary judgment; rather, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment. Id.; Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

## II.  Claims Based on Destruction of Legal Materials

In their motion for summary judgment, the defendants limit their discussion only to plaintiff's claims concerning the destruction of legal materials, evidence, and witness contact information necessary for his criminal defense. As to those claims, is clear that an arrested person

2

is allowed to assert a due process claim for the bad-faith destruction of exculpatory evidence if he

was left unable demonstrate his innocence in alternate ways.  See United States v. Thompson, 130

F.3d 676, 686 (5th Cir. 1997); see also United States v. Price, 298 Fed. App'x 931, 937 (11th Cir.

2008); United States v. Mejia, 291 Fed. App'x 79, 81 (9th Cir. 2008); United States v. Ossai, 485

F.3d 25, 28 (1st Cir. 2007); United States v. LaVallee, 439 F.3d 670, 699 (10th Cir. 2006); United

States v. Stewart, 388 F.3d 1079, 1085 (7th Cir. 2004).

The defendants argue, however, that plaintiff's claims must nevertheless be considered in

light of Heck v. Humphrey, 512 U.S. 477 (1994).  In Heck, the United States Supreme Court stated:

> We hold that, in order to recover damages for allegedly unconstitutional
> conviction or imprisonment, or for other harm caused by actions whose unlawfulness
> would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the
> conviction or sentence has been reversed on direct appeal, expunged by executive
> order, declared invalid by a state tribunal authorized to make such determination, or
> called into question by a federal court's issuance of a writ of habeas corpus, 28
> U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or
> sentence that has *not* been so invalidated is not cognizable under § 1983.  Thus,
> when a state prisoner seeks damages in a § 1983 suit, the district court must consider
> whether a judgment in favor of the plaintiff would necessarily imply the invalidity
> of his conviction or sentence; if it would, the complaint must be dismissed unless the
> plaintiff can demonstrate that the conviction or sentence has already been
> invalidated.

Heck, 512 U.S. at 486-87 (footnote omitted).

Clearly, if plaintiff had already been convicted of the criminal charge against him, these

claims would be barred by Heck.  In a similar case filed by inmate Steven Hamilton against Lt. D.

Lyons, the United States Fifth Circuit Court of Appeals explained:

> Hamilton also alleges that Lyons violated his constitutional rights by altering
> and destroying evidence relevant to the charges against him.  Convictions tainted by
> the suppression, destruction, or alteration of material evidence violate a defendant's
> Fourteenth Amendment right to due process.  Brady v. Maryland, 373 U.S. 83, 87,

3

> 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963).  If we were to find that Lyons altered and destroyed evidence relevant to the charges against Hamilton, that judgment would necessarily imply the invalidity of his subsequent convictions and sentences on those charges.  See Heck, 512 U.S. at ___, 114 S.Ct. at 2368, 2374 (holding that allegation of knowing destruction of exculpatory evidence necessarily implied invalidity of conviction and sentence).  Thus, Heck also bars this claim unless Hamilton proves that his convictions or sentences have been reversed, expunged, invalidated, or otherwise called into question.  Since Hamilton has not made such a showing, this claim is legally frivolous.

Hamilton v. Lyons, 74 F.3d 99, 103 (5th Cir. 1996); see also White v. Fox, 294 Fed. App'x 955, 958 (5th Cir. 2008); Abdul v. Normand, Civ. Action Nos. 10-3196, 10-4031, and 10-4452, 2011 WL 2550702, at *3-4 (E.D. La. June 27, 2011).

However, the parties indicate that plaintiff's criminal charge is still pending in state court. Therefore, Heck is not directly applicable, because the United States Supreme Court has expressly held that Heck does not bar "an action which would impugn *an anticipated future conviction*...." Wallace v. Kato, 549 U.S. 384, 393 (2007).  Nevertheless, the Supreme Court made clear that the limitation on Heck's direct applicability does not mean that federal courts should forge ahead with cases in which similar considerations exist.  Rather, the Supreme Court held:

> If a plaintiff files a false arrest claim before he has been convicted *(or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial)*, it is within the power of the district court, in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended.  If the plaintiff is ultimately convicted, and if the civil suit would impugn that conviction, Heck will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit.

Id. at 393-94 (citations omitted; emphasis added).  Therefore, under that reasoning, plaintiff's claims concerning the destruction of his allegedly necessary legal materials, evidence, and witness contact information should be stayed until such time as his state criminal proceedings are concluded.  If he

4

is ultimately convicted, the defendants may move to reopen this case to have those claims dismissed pursuant to <u>Heck</u>. On the other hand, if plaintiff is acquitted, he may move to reopen the case to pursue those claims.[1]

### III. Remaining Claims

Curiously, the defendants do not address plaintiff's remaining claims in their motion. Nevertheless, it is clear that those claims should be dismissed *sua sponte* for the following reasons.

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
>> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

---

[1]    The Court notes, however, that it appears plaintiff would then have another obstacle to overcome with respect to his claims. Because he claims that the destruction of the materials adversely affected his ability to mount a successful defense to his criminal charge, his acquittal on that charge would seem to severely undercut that claim. If he was acquitted despite the destruction of his evidence, it is unclear what compensable harm he suffered.

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the
> court shall dismiss the case at any time if the court determines that ... the action or
> appeal –
>> (i) is frivolous or malicious;
>> (ii) fails to state a claim on which relief may be granted; or
>> (iii) seeks monetary damages against a defendant who is immune
>> from such relief.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In making a determination as to whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted).

Although broadly construing the complaint,[2] the undersigned recommends that, for the following reasons, plaintiff's remaining claims be dismissed as frivolous and/or for failure to state a claim on which relief may be granted.

---

[2]    The court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

6

A.  Access-to-Courts Claim

In his complaint, plaintiff also claims that his right to access to the courts was violated by the confiscation and destruction of legal motions he was preparing for filing in his criminal case. To the extent that plaintiff intends this claim to be a separate and distinct claim under the First Amendment, it fares no better.  Regarding such claims, the United States Fifth Circuit Court of Appeals has explained:

> It is clearly established that prisoners have a constitutionally protected right of access to the courts.  The Supreme Court has stated that this right of access is founded in the Due Process Clause and assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights.  The Supreme Court has also viewed the right of access to the courts as one aspect of the First Amendment right to petition the government for grievances.  While the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court.

Brewer v. Wilkinson, 3 F.3d 816, 820-21 (5th Cir. 1993) (citations and quotation marks omitted).

In this case, plaintiff indicates in the complaint that he is represented by counsel in the state criminal proceeding.  Because he has counsel and, through that counsel, is able to raise any and all pertinent legal issues, motions, objections, claims, and defenses, he has no viable access-to-courts claim.  See Passman v. Blackburn, 652 F.2d 559, 566 (5th Cir. 1981); see also Caraballo v. Federal Bureau of Prisons, 124 Fed. App'x 284, 285 (5th Cir. 2005); Ashcraft v. Cameron County, No. 97-41219, 1998 WL 611201, at *3 (5th Cir. Aug. 17, 1998) ("A criminal defendant cannot complain that he was denied access to the courts while represented by counsel."); Ford v. Foti, No. 94-30614, 1995 WL 241811, at *3 (5th Cir. Apr. 14, 1995) ("A criminal defendant who is represented by counsel has meaningful access to the courts vis-a-vis the criminal action pending against him.");

7

Childs v. Scott, No. 94-60723, 1995 WL 153057 (5th Cir. Mar. 22, 1995) ("If a criminal defendant is represented by counsel, he has constitutionally sufficient access to the courts."); Webb v. Havins, No. 93-1452, 1994 WL 286151, at *3 (5th Cir. June 13, 1994); Crockett v. Carpenter, No. 93-1480, 1994 WL 144645, at *3 (5th Cir. Apr. 5, 1994); Passman v. Blackburn, 652 F.2d 559, 566 (5th Cir. 1981); cf. Prather v. Anderson, No. Civ. A. H-05-2964, 2005 WL 2277528, at *2 (S.D. Tex. Aug. 31, 2005) ("It is well established ... that a criminal defendant has no constitutional right to hybrid representation ...."). Accordingly, this claim should be dismissed as frivolous.

B.  Claims Based on the Destruction of Non-Legal Materials and Other Personal Property

Plaintiff also claims that, in addition to the materials allegedly needed to defend himself in his state criminal prosecution, many non-legal materials and other items of personal property were confiscated and destroyed during the shakedown. However, even if that occurred, plaintiff has no cognizable claim under federal law.

In Parratt v. Taylor, 451 U.S. 527 (1981), the United States Supreme Court held that where a state actor, through his random and unauthorized actions, *negligently* deprives a prisoner of his property, there is no due process violation *if* the state provides an adequate postdeprivation remedy. In Hudson v. Palmer, 468 U.S. 517 (1984), the Supreme Court extended that holding to *intentional* deprivations of property. In Daniels v. Williams, 474 U.S. 327, 330-31 (1986), the Supreme Court then overruled Parratt in part, holding that merely negligent deprivations of property simply do not implicate the Due Process Clause at all.

It is of no consequence whether plaintiff is alleging that he was deprived of his property through negligence or an intentional act, because "in neither instance does he state a valid § 1983

8

action for deprivation of property." Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005). If plaintiff is claiming negligence, his claims are barred by Daniels. If he is claiming intentional conduct, the claims are barred by Hudson, in that Louisiana law clearly provides him with an adequate postdeprivation remedy, i.e. a tort suit brought in state court. Marshall v. Norwood, 741 F.2d 761, 764 (5th Cir. 1984); Bennett v. Louisiana Department of Public Safety and Corrections, 61 Fed. App'x 919 (5th 2003); Arnold v. Inmate Accounts, 48 Fed. App'x 105 (5th Cir. 2002); Odom v. St. Tammany Parish S.O., Civ. Action No. 09-0109, 2009 WL 1147925, at *3 (E.D. La. Apr. 28, 2009). Claims foreclosed by the Parratt/Hudson doctrine are properly dismissed as frivolous and for failure to state a claim on which relief may be granted. Jackson v. Maes, 392 Fed. App'x 317, 318 (5th Cir. 2010); Robinson v. Robledo, 209 Fed. App'x 432 (5th Cir. 2006); Cochran v. Baldwin, 196 Fed. App'x 256, 257 (5th Cir. 2006); Henry v. Stalder, No. Civ. Action No. 06-0305, 2006 WL 1766558, at *6-7 (W.D. La. June 23, 2006).[3]

---

[3]     That said, the Court takes particular care to note that its opinion in this matter should not be interpreted as one approving of the indiscriminate and wholesale destruction of inmate property. Plaintiff alleges, and the defendants do not seem to dispute, than a considerable amount of personal property, including religious items and irreplaceable mementos, were simply taken and destroyed during the shakedown. While a clean, clutter-free dorm is a laudable goal, the arguably heavy-handed manner in which it was achieved in this case seems unduly harsh and unreasonable. While the Court acknowledges that prison officials are better equipped than judges to know what measures best achieve prison order and discipline, it is difficult to imagine how the seemingly unnecessary destruction of inmates' minimal and precious personal items promotes harmony and good behavior within a prison setting. The Court therefore urges officials at the Jefferson Parish Correctional Center to rethink the manner in which these policies are enforced. The fact that an official has the discretion and authority to take draconian actions does not mean that he should so. **Counsel for defendants is directed to deliver a copy of this footnote to Sheriff Newell Normand.**

Out of an abundance of caution, the Court also notes that to the extent that plaintiff is perhaps attempting to argue that the search itself was unconstitutional, such an argument clearly has no merit.  As the United States Supreme Court has explained:

> [S]ociety is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and ... , accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell.  The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions.

Hudson v. Palmer, 468 U.S. 517, 526 (1984); see also Bell v. Wolfish, 441 U.S. 520, 557 (1979) ("It is difficult to see how the detainee's interest in privacy is infringed by the room-search rule.  No one can rationally doubt that room searches represent an appropriate security measure ....  And even the most zealous advocate of prisoners' rights would not suggest that a warrant is required to conduct such a search."); Gill v. Neaves, No. SA-82-CA-582, 1986 WL 15688, at *4 (W.D. Tex. Aug. 5, 1986).

Therefore, for all of the foregoing reasons, these claims should be dismissed as frivolous and/or for failure to state a claim on which relief may be granted.

## C.  Equal Protection

Plaintiff also asserts an equal protection claim.  Although the claim is somewhat vague, it appears that he believes the Equal Protection Clause was violated because (1) a separate search conducted within the same dormitory a few weeks later was conducted in a more reasonable manner and/or (2) inmates housed in other areas of the prison were not subjected to similar searches.

To properly state an equal protection claim, a plaintiff's allegations must have two prongs: (1) "that he received treatment different from that received by similarly situated individuals" and

10

(2) "that the unequal treatment stemmed from a discriminatory intent." Taylor v. Johnson, 257 F.3d 470, 473 (5th Cir. 2001).  Even if plaintiff were to able to meet the requirements of the first prong, his claim clearly fails on the second.

As to that second prong, "[d]iscriminatory purpose in an equal protection context implies that the decisionmaker selected a particular course of action at least in part because of ... the adverse impact it would have on an identifiable group." United States v. Galloway, 951 F.2d 64, 65 (5th Cir. 1992); see also Taylor, 257 F.3d at 473.  Plaintiff makes no allegation that he is a member of an identifiable group, much less that the different treatment in this case stemmed from an intent to discriminate against him based on his membership in that group.  That alone is fatal to his claim. See, e.g., Duhr v. Collins, No. 93-8169, 1994 WL 122213, at *3 (5th Cir. Mar. 24, 1994); Hill v. Stephens, Civ. Action No. 08-5233, 2009 WL 1808596, at *3 (E.D. La. June 18, 2009). "[I]n the absence of an allegation of discriminatory motive, a mere claim of inconsistent outcomes in particular, individual instances furnishes no basis for relief based on the denial of equal protection." Stevenson v. Louisiana Board of Parole, No. 01-30252, 2001 WL 872887, at *1 (5th Cir. July 11, 2001).  Accordingly, this claim should likewise be dismissed as frivolous.

### D.  Freedom of Speech

Plaintiff next claims that his First Amendment right to freedom of speech was violated because among the items destroyed during the incident were manuscripts he had written and related papers.  The United States Supreme Court has explained:

> The First Amendment states that "Congress shall make no law ... abridging the freedom of speech."  This provision embodies our profound national commitment to the free exchange of ideas.  As a general matter, the First Amendment means that

> government has no power to restrict expression because of its message, its ideas, its
> subject matter, or its content.

Ashcroft v. American Civil Liberties Union, 535 U.S. 564, 573 (2002) (citations, quotation marks,

and brackets omitted).

If plaintiff's manuscripts and materials had been confiscated and destroyed based on their

content, then he might well have a cognizable First Amendment claim separate and distinct from his

claim for deprivation of his personal property.  See, e.g., Pursely v. DeTella, No. 97-4197, 2000 WL

262626, at *2-3 (7th Cir. Mar. 3, 2000).  However, plaintiff does not even argue, and the evidence

certainly does not suggest, that the defendants destroyed the manuscripts and related materials

because of their content.  Instead, all parties are in agreement that the search in question arose from

a desire of officials to locate specific contraband, i.e. a cellular telephone and charger.  During the

course and immediate aftermath of that search, deputies confiscated and destroyed as contraband

all manner of other personal items, regardless of their nature, because they were purportedly not

stored in compliance with jail regulations.  The fact that plaintiff's items by pure happenstance

included his manuscripts simply does not transform his noncognizable property claim into a

cognizable First Amendment claim.  Accordingly, this claim should also be dismissed as frivolous.

### E.  Deliberate Indifference

Lastly, plaintiff's final amendment to his complaint attempts to restate his prior challenges

to the search, seizure, and destruction of his property as a separate and distinct claim that the

defendants' actions violated his constitutional protections against "deliberate indifference in

conditions of confinement."  However, this simple recharacterization of the claims, although

12

undeniably creative, changes nothing, because the underlying claims are in their essence unchanged and are therefore still subject to being stayed or dismissed for the reasons previously stated.

Because all of plaintiff's claims are subject to being stayed or dismissed for the foregoing reasons, the Court need not, and does not, address the alternate grounds argued in the defendants' motion.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the defendants' motion for summary judgment, Rec. Doc. 77, be **GRANTED** and that plaintiff's motion for summary judgment, Rec. Doc. 57, be **DENIED**.

It is **FURTHER RECOMMENDED** that plaintiff's claims for the destruction of his legal materials be **STAYED**.

It is **FURTHER RECOMMENDED** that plaintiff's remaining claims be dismissed with prejudice as frivolous and/or for failure to state a claim on which relief may be granted.

It is **FURTHER RECOMMENDED** that the Clerk of Court be directed to mark this action **CLOSED** for statistical purposes.

It is **FURTHER RECOMMENDED** that the Court retain jurisdiction and that the case be restored to the trial docket upon plaintiff's motion once his state criminal prosecution is concluded, so that the stayed claims may proceed to final disposition.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[4]

New Orleans, Louisiana, this third day of October, 2011.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[4]     <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.

14